**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 11-cv-00558-WJM-MJW


SECURITIES AND EXCHANGE COMMISSION,

                         Plaintiff,

v.

LARRY MICHAEL PARRISH,

                         Defendant.

---

### ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

---

        Before the Court is Plaintiff Securities and Exchange Commission's ("SEC")

Motion For Default Judgment Against Defendant Larry Michael Parrish ("Parrish").

(ECF No. 12.)  Defendant has not responded to the SEC's Motion.

        For the reasons set forth below, the SEC's Motion is granted.

## I.  BACKGROUND

**A.      Factual Background**

        The following facts are taken from the SEC's Complaint (ECF No. 1) and are

deem admitted[1]:

        Defendant Larry Michael Parrish operated a Ponzi scheme that raised about

$9.2 million from at least 70 investors in 3 states, including Colorado, since 2005 from

the sale of unregistered securities.  (ECF No. 1 ¶¶ 1, 11-48.)  Defendant lured investors

---

        [1]      Defendant did not file an answer or other responsive pleading to the Complaint,
and the Clerk of the Court has entered default against him.  (ECF No. 10.)  A defendant in
default admits the factual allegations of the complaint.  *See Dundee Cement v. Howard Pipe &
Concrete*, 722 F.2d 1319, 1323 (7th Cir. 1983).

by guaranteeing 30% annual returns and claiming that the securities were "extremely low risk." (*Id*. ¶¶ 1,13, 15.)  In reality, these claims were fiction: Defendant's early investors were initially paid the exorbitant returns he guaranteed-about $5 million in total "profit" payments-but those payments were from investor deposits, not profitable trading. (*Id*. ¶¶ 2, 20-25.)  Defendant misappropriated at least $780,000 from investors for his personal benefit, including cash, luxury vacations, and other extravagances. (*Id*.)

Defendant intentionally deceived investors into buying Ponzi-scheme securities through misrepresentations and omissions of material fact. (*Id*. ¶¶ 6, 28-32.)  He lied by claiming that the securities would pay high rates of return based on low risk, profitable trades. (*Id*.)  The investment offered and sold by Defendant was an investment contract and thus a "security" within the meaning of federal securities laws. (*Id*. ¶¶ 12-19.)

Defendant never disclosed to investors that their "profit" payments were actually just payments made from other investors' funds, making the investment a Ponzi scheme. (*Id*.)  And Defendant made false lulling statements after he was unable to make Ponzi payments. (*Id*. ¶¶ 33-37.)  He directly solicited investors himself and indirectly solicited investors by using brokers and finders to whom he paid transaction-based compensation. (*Id*. ¶ 32.)  No registration statement was filed or in effect with the SEC in connection with these offerings and no exemption applied. (*Id*. ¶ 39.)

In 2007, Defendant consented to the entry of an administrative order barring him from associating with any broker-dealer.  (*Id*. ¶ 44.)  Despite the bar, Defendant acted as a broker by offering and selling securities, participating in securities transactions, and engaging in the business of effecting transactions in securities for the accounts of others.  (*Id*.)  Defendant pooled the funds invested in his Ponzi scheme and transferred the comingled funds to brokerage accounts for trading.  (*Id*. ¶ 45.)  He provided investment advice for compensation with respect to securities, and recommended that investors purchase the securities he offered and sold.  (*Id*.)

Defendant used the means of interstate commerce and the mails to solicit investors and send offering materials, contracts, information, and checks to investors.  (*Id*.)  In total, he received at least $4,139,858 in ill-gotten gains from his fraudulent and unregistered sales of investment contracts.  (*Id*. ¶¶ 9, 13, 41, 50-52.)

**B.    Procedural Background**

On March 7, 2011, the SEC filed a Complaint against Defendant alleging violations of federal securities law.  (ECF No. 1.)  Defendant was personally served with a Summons and Complaint on March 10, 2011, and his answer or other responsive pleadings was due on or before March 31, 2011.  (Return of Service (ECF No. 3); Motion for Entry of Default (ECF No. 5); Entry of Default (ECF No. 10.))  Defendant did not file an answer or other pleading in this case.  Consequently, the Clerk of the Court entered default against him on June 1, 2011.  (ECF No. 10.)  Accordingly, Defendant is in default.  *See* Fed. R. Civ. P. 12(a)(1)(A)(i).

On December 15, 2011, the SEC filed a Motion For Default Judgment Against Defendant pursuant to Fed. R. Civ. P. 55(b)(2) seeking an entry of default judgment and various forms of relief.  (ECF No. 12.)  Specifically, the SEC requests that the Court enter an order of permanent injunction and final judgment, enjoin Defendant from violating federal securities laws, hold Defendant liable for $4,987,777 in disgorgement and pre-judgment interest, and impose a significant penalty.  (*Id*.)  Defendant has not responded to the SEC's Motion.

## II.  LEGAL STANDARD

Default judgment may be entered against a party who fails to appear or defend*.* Fed. R. Civ. P. 55.  A defendant in default admits the factual allegations of the complaint.  *See Dundee Cement v. Howard Pipe & Concrete*, 722 F.2d 1319, 1323 (7th Cir. 1983).  The Court accepts undisputed facts in affidavits and exhibits.  *See Deery Am. Corp. v. Artco Equip. Sales, Inc*., No. 06-cv-01684, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007).  The Court also considers whether the unchallenged facts support entry of a judgment.  *See McCabe v. Campos*, No. 05-cv-00846, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008).  Further, the Court has broad discretion in entering default judgment.  *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987).

## III.  ANALYSIS

The SEC alleges that Defendant violated various federal securities laws based on the above described facts.  Specifically, the SEC argues that Defendant violated the securities registration, anti-fraud, broker-dealer registration, and broker-dealer bar provisions of 15 U.S.C. §§ 77e(a) and (c), 77q(a), 78j(b), 78o(a)(1), and 78o(b)(6)(B)(i),

80b-6(1), (2), and (4), and 17 C.F.R. §§ 240.10b-5 and 275.206(4)-8.  (ECF No. 12.)
The SEC requests that the Court enter an order of permanent injunction and final
judgment, enjoin Defendant from violating federal securities laws, hold Defendant liable
for $4,987,777 in disgorgement and pre-judgment interest, and impose a significant
penalty.  (*Id*. at 12-15.)

### A.    Violations of the Antifraud Provisions of Federal Securities Laws

The SEC asserts that Defendant made false and misleading material statements
and omissions about his investment in connection with the offer and sale of securities,
and engaged in acts of fraud and deceit on prospective and existing investors, violating
the antifraud provisions of the federal securities laws.  (ECF No. 1 ¶¶ 28-32.)  To prove
such liability, the SEC must establish that Defendant (1) engaged in fraudulent conduct,
(2) in connection with the purchase or sale of securities, (3) through means or
instruments of transportation or communication in interstate commerce or the mails, (4)
with the requisite scienter.  *See City of Philadelphia v. Fleming Cos.*, 264 F. 3d 1245
(10th Cir. 2001).

Section 10(b) and Rule 10b-5 of the Exchange Act prohibit the misrepresentation
or misleading omission of material facts in connection with the purchase or sale of
securities.  *See Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).  A fact is material
if there is a substantial likelihood that a reasonable investor would consider the
information important in making an investment decision.  *Id*.  While scienter is not
required to establish a violation of Section 17(a)(2) or (3) of the Securities Act,
violations of Section 17(a)(1) of the Securities Act and Section 10(b) and Rule 10b-5 of

the Exchange Act require scienter, which knowledge or extreme recklessness satisfies. *See Aaron v. SEC*, 446 U.S. 680, 701-02 (1980); *Hackbart v. Holmes*, 675 F.2d 1114, 1117 (10th Cir. 1982) (defining "recklessness" as "an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.").

Here, Defendant knowingly or recklessly made many material false and misleading statements and omissions about his investment and engaged in acts of fraud and deceit on prospective and existing investors.  (ECF No. 1 ¶¶ 28, 29, 30-37.) He also knowingly defrauded investors with the requisite scienter.  (*Id*. ¶ 32.)  *See Webster v. Omnitron Int'l*, 79 F.3d 776, 785 (9th Cir. 1996) ("[a] jury could rationally conclude that the promotion of a pyramid scheme demonstrates the necessary fraudulent intent").  Accordingly, the Court finds that Defendant violated the antifraud provisions of the federal securities laws, Section17(a) of the Securities Act and Section 10(b) and Rule 10b-5 of the Securities Exchange Act.

## B.    Violations of Sections 5(a) and 5(c) of the Securities Act

To establish such a violation of Sections 5(a) and 5(c) of the Securities Act, the SEC must prove that Defendant directly or indirectly offered or sold securities without a registration statement.  *See SEC v. Int'l Chem. Dev. Corp.*, 469 F.2d 20, 27 (10th Cir. 1972).  "The elements of [an] action for violation of Section 5 are (1) lack of a registration statement as to the subject securities; (2) the offer or sale of the securities; and (3) the use of interstate transportation or communication and the mails in

connection with the offer or sale." *Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 124 (2d Cir. 1998) (quotation omitted); *see also* 15 U.S.C. §§ 77e(a) and 77e(c). Scienter is not required. *See Aaron v. SEC*, 446 U.S. 680, 714 n.5 (1980).

Once the SEC establishes a *prima facie* violation, it is a defendant's burden to prove an exemption applies. *See SEC v. Ralston Purina Co.*, 346 U.S. 119, 126 (1953). Any claimed exemption is strictly construed against the claimant. *SEC v. Murphy*, 626 F.2d 633, 641 (9th Cir. 1980). Section 5 liability extends beyond those who sell stock in unregistered transactions to those who are "both a 'necessary participant' and 'substantial factor' in the sales transaction[s]." *Sec v. Phan*, 500 F.3d 895, 906 (9th Cir. 2007). Sellers of securities include persons who solicit purchases and who are "motivated at least in part by a desire to serve [their] own financial interests." *Pinter v. Dahl*, 486 U.S. 622, 647 (1988). The use of intermediaries between the seller and purchaser does not limit liability. *See SEC v. Wolfson*, 539 F.3d 1249, 1261, n.19 (10th Cir. 2008) (Section 5 is not limited to persons who actually sell a security).

Here, Defendant directly solicited investors himself and indirectly solicited investors by using brokers to whom he paid transaction-based compensation. (ECF No. 1 ¶ 12.) No registration statement was filed or in effect with the SEC in connection with these offerings, and no exemption applied. (*Id*. ¶ 39.) Defendant also used the means of interstate commerce and the mails to solicit investors and send offering materials, contracts, information, and checks to investors. (Id. ¶¶ 9, 13, 41, 50-52.)

Therefore, the Court finds that Defendant offered and sold unregistered securities in violation of Sections 5(a) and 5(c) of the Securities Act.

### C.      Violations of Section 15(a)(1) of the Exchange Act

The SEC further argues that Defendant violated Section 15(a)(1) of the Exchange Act by acting as an unregistered broker-dealer in connection with the offer and sale of his investment.  (ECF No. 1 ¶¶ 40-42.)  Section 3(a)(4) of the Exchange Act defines a "broker" as "any person engaged in the business of effecting transactions in securities for the account of others."  And Section 15(a)(1) makes it unlawful for a broker or dealer to use jurisdictional means, such as the telephone or mails, to effect transactions in securities unless he is registered with the SEC.  Scienter is not an element of a violation of Section 15(a)(1).

The facts described above establish that Defendant directly solicited investors, receiving transaction-based compensation, and indirectly solicited investors by using brokers to whom he paid transaction-based compensation.  (ECF No. 1 ¶¶ 12, 40-42.)  Further, Defendant used the means of interstate commerce and the mails to solicit investors and send offering materials, contracts, information, and checks to investors.  (*Id.* ¶¶ 9, 13, 41, 50-52.)  Thus, Defendant acted as an unregistered broker-dealer in violation of Section 15(a)(1) of the Exchange Act.

### D.      Violations Sections 206(1), (2), and (4) and Rule 206(4)-8 of the Advisers Act

The SEC also contends that Defendant violated Sections 206(1), (2), and (4) and Rule 206(4)-8 of the Advisers Act by committing fraud while acting as an investment adviser.  (ECF No. 1 ¶¶ 45-48.)  Indeed, the evidence shows that Defendant pooled

funds invested in his Ponzi scheme and transferred the comingled funds to brokerage accounts for trading.  (*Id*.)  He provided investment advice for compensation with respect to securities, and recommended that investors purchase the securities he offered and sold.  (*Id*.)  As such, Defendant acted as an investment adviser as defined by Section 202(1)(11) of the Advisers Act, and he is subject to the antifraud provisions of the Advisers Act Section 206 which applies to "any investment adviser" whether registered with the SEC or not.  *See* 15 U.S.C. § 80b-2(1)(11), 15 U.S.C. § 80b-6(1), (2), and (4), and 17 C.F.R. § 275.206(4)-8.  Therefore, the Court finds that Defendant knowingly or recklessly violated the antifraud provisions of the Advisers Act.

### E.   Request for Permanent Injunction Against Future Violations of Federal Securities Laws

In response to the violations described above, the SEC requests that the Court enter a judgment permanently enjoining Defendant from future violations of Sections 5(a), (c) and 17(a) of the Securities Act, Sections 10(b), 15(a)(1), 15(b)(6)(B)(i), and Rule 10b-5 of the Exchange Act, and Sections 206(1), (2), and (4) and Rule 206(4)-8 of the Advisers Act.  (ECF No 12 at 12-13.)

As the Tenth Circuit has stated:

An injunction based on the violation of securities laws is appropriate if the SEC demonstrates a reasonable and substantial likelihood that the defendant, if not enjoined, will violate securities laws in the future. Determination of the likelihood of future violations requires analysis of several factors, such as the seriousness of the violation, the degree of scienter, whether defendant's occupation will present opportunities for future violations and whether defendant has recognized his wrongful conduct and gives sincere assurances against future violations. Although no single factor is determinative, we have previously held that the degree of scienter 'bears heavily' on the decision. A knowing violation of 10(b) or 17(a)(1) will justify an injunction more readily than a negligent violation of 17(a)(2) or (3).

*S.E.C. v. Pros Int'l, Inc.*, 994 F.2d 767, 769 (10th Cir. 1993) (internal citations omitted).

The Court agrees with the SEC that the totality of the circumstances here weighs in favor of a permanent injunction.  Defendant misappropriated over $780,000 in investor funds for his personal benefit.  (ECF No. 1 ¶¶ 26-27.)  He also deceived investors and stole their money by misrepresenting the Ponzi-scheme he offered.  (*Id*. ¶¶ 28-32.)  Further, Defendant had already been barred by the SEC for operating a prior investment scheme, which strongly indicates that he is likely to continue violating the securities laws.  (*Id*. ¶ 31.)  Accordingly, the Court finds that entry of a permanent injunction is warranted.

### F.      Disgorgement of Ill-Gotten Gains

The SEC also requests that the Court enter a judgment disgorging Defendant of his ill-gotten gains, plus prejudgment interest.  (ECF No. 12 at 13-14.)  Disgorgement of ill-gotten gains plays a central role in the enforcement of the federal securities laws. *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998).  Disgorgement should include all gains flowing from illegal activities.  *SEC v. JT Wallenbrock*, 440 F.3d 1109, 1117 (9th Cir. 2006).  In a Ponzi scheme, disgorgement is calculated by subtracting total distributions to investors from total contributions by investors.  *Id*. at 1114; *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 384-85 (S.D.N.Y. 2007).  Furthermore, a prejudgment interest penalty, like disgorgement, is intended to prevent a defendant from profiting from illegal conduct.  *SEC v. Sargent*, 329 F.3d 34, 40 (1st Cir. 2003).

Based on the Declaration of Kerry M. Matticks, an accountant with the SEC's Division of Enforcement, Defendant is ordered to disgorge ill-gotten gains of $4,139,858 plus prejudgment interest of $847,919.  (ECF No. 12, Ex. 2.)  This disgorgement is calculated as follows: proceeds from investors of $9,199,027 minus payments to investors of $5,059,169 equals investor losses of $4,139,858.  (*Id.*); *see also Hunt v. Inter-Globe Energy, Inc.* 3., 770 F.2d 145, 148 (10th Cir. 1985) (court may enter a default judgment without a hearing if amount is capable of mathematical calculation).

### G.    Civil Penalties

Finally, the SEC seeks the imposition of civil penalties up to the amount of the gross pecuniary gain from Defendant's scheme.  (ECF No. 12 at 14-15.)  Courts determine civil penalty amounts "in light of the facts and circumstances," using a three tier penalty structure.  *See* 15 U.S.C. §§ 77t(d)(2) & 78u(d)(3)(B). Third tier penalties apply when a violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  15 U.S.C. § 77t(d)(2)(C); 15 U.S.C. § 78u(d)(3)(B)(iii)). When imposing penalties, a court can award up to the maximum penalty amount or "the gross amount of pecuniary gain to such defendant as a result of the violation" for each such violation of the Securities Act or the Exchange Act. 15 U.S.C. §§ 77t(d)(2)(C) & 78u(d)(3)(iii); 17 C.F.R. §§ 201.1001-201.1003.  *See, e.g., SEC v. CMKM Diamonds, Inc.*, 635 F. Supp. 2d 1185, 1193-94 (D. Nev. 2009) (court imposed a single penalty equal to the amount of disgorgement); *S.E.C. v. Interlink Data Network, Inc., et. al.*, No. 93-cv-3073, 1993 WL

603274, at *13 (C.D. Cal. Nov. 15, 1993) (ordering a $12,285,035 penalty equal to the disgorgement amount for 565, 439, and 527 violations because "there are many ways to compute the amount of a civil penalty under the federal securities law"); *S.E.C. v. Yuen*, 272 Fed. Appx. 615, 618 (9th Cir.2008) (affirming a District Court's penalty equal to the disgorgement amount as "well within [the District Court's] discretion").

After considering the above factors, the Court finds that a significant penalty is appropriate here.  Investors lost over $4.1 million due to Defendant's fraud.  (ECF No. 1 ¶¶ 1, 11-48.)  Defendant promised 30% annual returns and claimed that his investment was "extremely low risk," when in fact it was a Ponzi scheme.  (*Id.*)  He also spent over $780,000 of investors' funds on his own indulgent lifestyle.  (*Id.*)  Based on these facts, the Court imposes a civil penalty in the amount of $4,987,777.26, which equals Defendant's $4,139,858 in ill-gotten gains plus prejudgment interest of $847,919.  (ECF No. 12, Ex. 2.)

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1.    Plaintiff SEC's Motion For Default Judgment Against Defendant Larry Michael Parrish (ECF No. 12) is GRANTED;

2.    Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5

promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security: (a) to employ any device, scheme, or artifice to defraud; (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;

3.      Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act of 1933 (the "Securities Act") [15U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly: (a) to employ any device, scheme, or artifice to defraud; (b) to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser;

4.    Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 5 of the Securities Act [15 U.S.C. § 77e] by, directly or indirectly, in the absence of any applicable exemption: (a) Unless a registration statement is in effect as to a security, making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; (b) Unless a registration statement is in effect as to a security, carrying or causing to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale; or (c) Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed with the Commission as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8 of the Securities Act [15 U.S.C. § 77h];

5.    Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order of Permanent Injunction by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section

15(a) of the Exchange Act [15 U.S.C. § 78o(a)], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security (other than an exempted security or commercial paper, bankers' acceptances, or commercial bills) unless such person is registered with the Commission as a broker or dealer in accordance with Section 15(b) of the Exchange Act;

6.     Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Order of Permanent Injunction by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 206(1), (2), and (4) and Rule 206(4)-8 of the Advisers Act [15 U.S.C. § 80b-6(1), (2), and (4) and 17 C.F.R. § 275.206(4)-8], by, while acting as an investment adviser, directly or indirectly, with scienter, employing devices, schemes, or artifices to defraud clients or prospective clients; engaging in transactions, practices, or courses of business which operated or operate as a fraud or deceit upon any client or prospective client; and engaging in acts, practices, or courses of business which are fraudulent, deceptive, or manipulative;

7.     Defendant is liable for disgorgement of $4,139,857.55, representing profits gained as a result of the conduct alleged in the Complaint, together with prejudgment interest thereon in the amount of $847,919.71. Defendant shall satisfy this obligation by paying $4,987,777.26 within 14 days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal

money order payable to the Securities and Exchange Commission.  The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, 100 F Street, NE, Stop 6042, Washington DC 20549, and shall be accompanied by a letter identifying Parrish as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment.  Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961.  The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury;

8.    Defendant shall pay a civil penalty in the amount of $4,987,777.26  pursuant to 15 U.S.C. §§ 77t(d)(2) and 78u(d)(3)(B).  Defendant shall make this payment within 14 days after entry of this Final Judgment by certified check, bank cashier's check, or United States postal money order payable to the Securities and Exchange Commission.  The payment shall be delivered or mailed to the Office of Financial Management, Securities and Exchange Commission, 100 F Street, NE, Stop 6042, Washington DC 20549, and shall be accompanied by a letter identifying Parrish as a defendant in this action; setting forth the title and civil action number of this action and the name of this Court; and specifying that payment is made pursuant to this Final Judgment.  Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 USC § 1961. The Commission shall remit the funds paid pursuant to this paragraph to the United States Treasury; and

9.     This Court shall retain jurisdiction of this matter for the purposes of enforcing the

terms of this Final Judgment.

Dated this 25th day of September, 2012.

BY THE COURT:

_____
William J. Martínez
United States District Judge

-17-